JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Jharon Perkins ("defendant"), appeals from the judgment entered pursuant to a jury verdict finding him guilty of intimidation and aggravated menacing. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On the morning of August 3, 2004, Mark Edwards ("Edwards"), a Traffic Controller for the City of Cleveland, was assigned to the area around the Justice Center to conduct traffic control and ticket illegally parked cars. At approximately 10:30 a.m., Edwards began writing a ticket for a car parked illegally in front of a fire hydrant on West 3rd Street in front of the Marion Building. While Edwards was writing the ticket, defendant began walking toward him and calling him names, including "punk bitch." Defendant then got into the car and told Edwards "I should shoot your white ass." Defendant drove off before Edwards had the chance to put the ticket on the car.
 {¶ 3} Two days later, Edwards was again working as a traffic controller around the Justice Center. Edwards saw the defendant on the sidewalk yelling at a prisoner that was being escorted into the Justice Center. Defendant also saw Edwards and confronted him in the street about the parking ticket. He told Edwards that "I should slap your ass," and "I should have sicced [sic] my dog on you." As Edwards walked away, defendant told Edwards, "I should shoot you." Edwards, feeling threatened by defendant's statement, attempted to contact a police car in the area. Unable to do so, he walked into the Justice Center and, accompanied by a Cleveland Police Sergeant, drove around the Justice Center looking for the defendant. Approximately 20 minutes later, Edwards saw the defendant and a female enter the Justice Center. He identified defendant to sheriff's deputies as the man who threatened him. Deputy Robert Dvoroznak of the Cuyahoga County Sheriff's Department also identified defendant as the man he saw threaten Edwards while the Deputy was walking his prisoner across the street.
 {¶ 4} On September 2, 2004, the Cuyahoga County Grand Jury indicted defendant on two counts of intimidation in violation of R.C. 2921.03 and two counts of aggravated menacing in violation of R.C. 2903.03.
 {¶ 5} On May 18, 2005, a jury trial began. On May 20, 2005, the jury returned guilty verdicts on one count of intimidation and one count of aggravated menacing. Defendant was found not guilty on the other two counts. Defendant was sentenced to one year of incarceration. Defendant now appeals and raises two assignments of error for our review.
 {¶ 6} "I. The trial court erred when it denied appellant's Rule 29 motion for judgment of acquittal of intimidation and aggravated menacing charges."
 {¶ 7} In this assignment of error, defendant argues that the State failed to present sufficient evidence to support his convictions. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. Statev. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 8} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 9} Here, defendant was charged with intimidation and aggravated menacing. The offense of intimidation is defined by R.C. 2921.03(A), which provides, in pertinent part, that "no person, knowingly and by force, by unlawful threat of harm to any person * * * shall attempt to influence, intimidate, or hinder a public servant * * * in the discharge of the person's duty." The offense of aggravated menacing is defined by R.C. 2903.21, which provides that "no person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such person, such other person's unborn, or a member of the other person's immediate family."
 {¶ 10} The record contains sufficient evidence, when viewed in the light most favorable to the State, that defendant was guilty of intimidation and aggravated menacing. Therefore, the trial court properly denied his motion for acquittal.
 {¶ 11} At trial, the following testimony was heard: Edwards, a Traffic Controller for the City of Cleveland, testified that he was issuing a parking ticket on the morning of August 3, 2004, when the defendant began swearing at him, calling him a "punk bitch" and telling him that he "should shoot [his] white ass." He testified that two days later, while issuing tickets in the same area, the defendant confronted him in the middle of the street and continued to threaten him. Specifically, that defendant said, "I should slap your ass," "I should have sicced [sic] my dog on you," and "I should shoot you." Next, Deputy Dvoroznak testified that he was escorting a prisoner to the Justice Center when he heard defendant yell at Edwards, "You wrote me a ticket, I will f____ kill you."
 {¶ 12} When this evidence is viewed in the light most favorable to the State, the court could find that defendant knowingly attempted to intimidate a traffic controller while in the discharge of his duty. The court could also find that defendant engaged in a pattern of conduct in which he knowingly caused Edwards to believe that he would cause him physical harm or mental distress.
 {¶ 13} Defendant contends that there is insufficient evidence to convict him of intimidation and aggravated menacing because the threat was not "imminent" or "threatening to occur immediately." We disagree.
 {¶ 14} First, it is not an element of the offense of aggravated menacing that the offender either intends to carry out his threat or that he is even able to carry it out. Dayton v.Dunnigan (1995), 103 Ohio App.3d 67, 71. Even a conditional threat can constitute a violation of the menacing laws. State v.Collie (1996), 108 Ohio App.3d 580, 582. What is necessary to establish the crime of aggravated menacing is the victim's subjective belief that the defendant will cause serious physical harm. State v. Klempa, Belmont App. No. 01 BA 63, 2003-Ohio-3482. Thus, a person can be convicted of aggravated menacing even though the person has not made any movement toward carrying out the threat. Id.
 {¶ 15} Next, the offense of intimidation does not require that the actions of the speaker cause the victim to believe the speaker would cause imminent physical harm. Rather, "it is the unlawful threat of harm, and not actual harm, that serves as a basis for the offense of intimidation." See State v. Wilburn,
Cuyahoga App. No. 82573, 2003-Ohio-6495 (conviction for intimidation affirmed when the defendant threatened police officers but did not actually have a gun and could not have actually carried out the threats).[1]
 {¶ 16} Defendant's reliance on State v. Collie, supra is misplaced. In Collie, the defendant's conviction for domestic violence was reversed because there was insufficient evidence to show that the threatened harm was imminent.[2] However, the court specifically noted that the results might have been different had defendant been charged under the aggravated menacing statute, since "a conditional threat can constitute a violation of the menacing laws." Id. at 582-583.
 {¶ 17} Construing the testimony in a light most favorable to the State, as we are required to do, it is clear there was sufficient evidence which, if believed, demonstrated that defendant engaged in the acts of intimidation and aggravated menacing as defined by R.C. 2923.03 and 2903.21. Accordingly, this Court concludes that any rational trier of fact could have found the essential elements of intimidation and aggravated menacing proven beyond a reasonable doubt. Defendant's arguments to the contrary must fail.
 {¶ 18} Assignment of Error I is overruled.
 {¶ 19} "II. The convictions of intimidation and aggravated menacing were against the manifest weight of the evidence."
 {¶ 20} In this assignment of error, defendant argues that his convictions are against the manifest weight of the evidence. While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins, supra at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 21} Here, the jury heard Edwards testify that the defendant made numerous threats to him as he was issuing a parking ticket on August 3, 2004 and again two days later in the street in front of the Justice Center. The jury heard Deputy Dvoroznak testify that he heard the defendant threaten Edwards in the street about a parking ticket. Under these circumstances, we conclude that the same facts that overcome a sufficiency of the evidence claim also overcome his manifest weight argument.
 {¶ 22} Defendant contends that he is a victim of "mistaken identity" and that the record contains insufficient evidence that he was the man who threatened Edwards. First, he argues that Edwards' and Deputy Dvoroznak's identification of him was not reliable because they testified that they did not get a good look at his face. Second, he argues that Charlotte Benn ("Ms. Benn") testified she was the owner of the vehicle that received a ticket from Edwards on August 3, 2004 and that she does not know the defendant and never loaned out her car. Finally, he argues that his girlfriend, Bridget Jones ("Ms. Jones"), testified that she was with him on August 5, 2004 and that he never threatened Edwards.
 {¶ 23} At trial, Edwards testified that he saw the defendant on two separate occasions and that they were face to face in the middle of the street. Edwards also testified that he remembered that defendant had tattoos on his arms and a scar on the inside of his wrist. Defendant was ordered to roll up his sleeves and it was revealed that he did have tattoos and a scar on his hands. Deputy Dvoroznak also identified defendant as the man he saw threaten Edwards. The Deputy stated that he saw the defendant outside yelling at Edwards and inside the Justice Center. On the other hand, the jury also heard Ms. Benn testify that she did not loan her car to the defendant and that she did not know him. Ms. Benn's testimony challenges the officers' identification of the defendant. However, there is a striking similarity in defendant's language during the two incidents reported by Edwards. Specifically, in both instances the language was crude, angry and violently hostile. The jury could reasonably have relied upon the close similarity in the language under the circumstances to support the credibility of Edwards' identification of the defendant. State v. DeHass (1967), 10 Ohio St.2d 230. Moreover, under DeHaas, the jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Accordingly, whether Edwards and Deputy Dvoroznak's identification of the defendant or Ms. Jones' testimony regarding the defendant's whereabouts on August 5, 2004 was credible or not was primarily for the trier of fact to determine. Id.
 {¶ 24} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in finding defendant guilty of intimidation and aggravated menacing. We find substantial, competent, credible evidence upon which the jury could base its decision that defendant knowingly threatened to harm Edwards while he was in the discharge of his official duties and engaged in a pattern of conduct in which he knowingly caused Edwards to believe that he would cause him physical harm or mental distress.
 {¶ 25} Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Kilbane, J., concur.
[1] See, also, State v. Simms, Athens App. No. 05CA10,2005-Ohio-5681 (whether the defendant was actually armed at the time he made threats to police officers was "completely irrelevant" to whether he knowingly threatened them in an attempt to intimidate them while they were in the discharge of their official duties).
[2] R.C. 2919.25(C) provides that "no person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." (Emphasis added).